My name is Mark Sabat. I practice in Eugene, Oregon. I am here on behalf of Jesse Powell. I'd ask the court to reserve two minutes for rebuttal, please. Just watch the clock, counsel. It's counting down. Thank you, Your Honor. The primary issue before the court pursuant to Judge Aiken's opinion in this case is regarding a 2000 conviction for coercion under Oregon law and whether that qualifies as a predicate for ACCA purposes after Begay. I want to amplify on two arguments that I made in the brief, and I submitted a 28-J letter, so did the government, earlier in the week regarding one of the arguments. The first argument is the question, does an Alford plea provide the factual certainty required by Shepard and Begay to determine that a prior conviction is a crime of violence for ACCA purposes? The second question is, assuming arguendo, the court finds that there are sufficient facts in the indictment admitted by Mr. Powell, do the indictment and judgment in this case regarding the coercion conviction still establish the kind of purposeful, violent, aggressive conduct that Begay requires? Well, now, the government needs three violent felonies. There are two that are undisputed, right? So we're really only talking about the coercion? Correct, Your Honor. I think the government will want to talk about another or two, but I'm only talking about the one, and I'm prepared to answer any questions the court may have about others. Now, when he entered his Alford plea, he did enter the plea to the indictment, the entire indictment, which listed four predicates, correct? When he entered his Alford plea, it's not clear. We have no plea colloquy. We have no plea petition. There is no stipulated statement of facts that was before the court, and so if the court looks at the documents regarding the Alford plea on the coercion, there are only two documents in the record. It's the indictment and the indictment charged for violent felonies, correct? The indictment charged attempted assault in the first degree, which was dismissed, coercion, menacing, which was dismissed, a lewd and unauthorized use of a motor vehicle and possession of a stolen vehicle. He entered Alford pleas, and it's interlineated right on the indictment by the sentencing judge to the coercion, a lewd, and UUV. The only predicate there or arguable predicate that's before the court is the coercion. There's a similar kind of issue in a Ninth Circuit case called United States v. Vidal. There is, Your Honor. How does that impact this case? I think Vidal was a case, if I'm not mistaken, related to a West plea. In California, which is similar to an Alford plea. It is, and I think it's directly on point, meaning I think that, as I understand it, this court found that a West plea could not provide a predicate. Similar to that case that you cited to us in the 20HA letter. Yes, yes. That's a Fourth Circuit case that just came out. There's a recent case this court decided. Does Oregon treat Alford pleas any differently than what the Supreme Court said in Alford? You know, it is a court-by-court matter, as far as I know. The statutes provide for only three kinds of pleas in Oregon. There's a guilty plea, a not guilty plea, or a no contest plea. It's under ORS 135, near one of the sections cited by Mr. Papagni regarding no contest pleas. But Alford is not a statutory animal in Oregon. It's recognized by the courts of Oregon, isn't it? It is recognized by the courts. I understand it's out of favor in some courts. I understand perhaps the U.S. Attorney's Office will not accept an Alford plea, and I know that there are... The U.S. courts are a little bit different. Yes, yes. And so there is no uniform application of the Alford doctrine. Meaning what's clear is that Alford specifically denies the factual allegations in the indictment and accepts guilt for purposes of sentencing a plea. So when he entered his plea, he didn't enter his plea to the counts in the indictment as alleged. He just entered an Alford plea. Correct. He said pursuant to Northgate. Presumably. I mean, we have no record of that. We don't have the plea colloquy, but I know. I have appeared in this court in front of this same judge for 20 years, and typically what would happen is the attorney would proffer that the defendant was there to enter a guilty plea pursuant to North Carolina v. Alford. The judge may or may not ask for a factual record, and the judge would explain to the defendant the rights he was given. Well, that's the key thing about Alford is that you have to make a factual determination. The judge has to be kind of certain that there is a factual basis at least. Well, that's what cases that interpret Alford say. Mr. Papagni has cited the court to a statute that requires that in the context of no contest pleas. It's not so clear what happened in this instance. The only trouble is that Superior Court judges and State Court judges, when they have to work in such volume, they are sometimes a little loose in how they make factual findings and whatnot. It doesn't happen the way we think that it does. It's not uniform, Your Honor, at the very least. Counsel, why isn't the third-degree assault conviction a violent felony? Well, it's not because Judge Aiken found it was not. You'll have to tell us more than that. Well, I'd encourage the court to look at the indictment in that case. Again, what's in the record in that case is a copy of the indictment and the judgment. And the indictment charges, at least in the heading, the caption assault in the second degree, but the language in the indictment does not even charge a crime, meaning there is no allegation in the indictment of physical injury. And so we can speculate about what happened at the change of plea. That indictment alleged a second degree, wasn't it? It alleged – and I'll read it. The defendants honor about – and it's two defendants. did unlawfully and knowingly subject Bruce Myers by means of a dangerous weapon, a flashlight, a pipe or pipe-like object, both defendants being personally present. And so there's no allegation of physical injury that's required by the statute. Well, he's often found guilty of third degree. He is, and there's a number of ways that could be committed pursuant to Oregon law. And my argument was, isn't it just his life? Do we know the factual basis for the third degree conviction? We don't. No. No. So we have no plea colloquy. We have no plea petition. We have no stipulated statement of facts that's in the record. What we have is the indictment and the judgments, and that would be my response, Your Honor. Certainly that was the argument that was made to Judge Aiken. Now the government has also alluded to the second first degree burglary conviction in 1994 that occurred on the same day. It's actually a third, and so we're at the same time. In that one indictment there were two second degree burglaries that were alleged that occurred on the same day. Right. And I expect Mr. Papagni will address that, but I'll do that, Your Honor, and thank you. The indictment in the felon in possession case that has us here today back in 2003 specifically stated four predicate offenses as the predicate or the hook for ACC treatment. The so-called third burglary, one that Mr. Papagni has argued in the briefs, was not one of the four predicate offenses listed in the indictment. Does the government have to allege the predicate offenses? They do not, Your Honor. They have to give notice, separate notice? Correct. They gave you the convictions, right? Underlying it's prior to the sentencing all of them were turned over. And it's significant the PSR writer did not rely on that burg one, the one that's going to be at issue this morning. The government did not object to the non-reliance on that burg one in response to the PSR. Well, nor did defense counsel object to the coercion one being a qualifying offense at the initial. I agree, Your Honor, and my response to that is the law has changed. The law has changed. Counsel, you're down to one minute. If you want to reserve, you may. Otherwise, you can continue. I reserved two minutes, Your Honor. You're down to 56 seconds, counsel. Well, let me finish then. Regarding the burg one, what is significant there is that's been before Judge Aiken twice. Judge Aiken was the sentencing judge in state court on that burg one. I submit that's very telling. She was a circuit court judge at the time. The argument, of course, is that they were committed on occasions different from one another, separate from one another. If there were different victims, if there was proof of a very short temporal element there, there are specific findings Oregon statute requires in order to sentence consecutively. Judge Aiken declined to do that twice. She's never mentioned the burg one. The government argued it to her in the 2255. Again, I would submit Mr. Papagni is a senior prosecutor in that office. I'd submit it was more than an oversight that he did not allege the burg one in the indictment originally. Thank you, counsel. Your time has expired. We'll hear from the government. Please, the court. My name is Frank Papagni. I am the prosecutor responsible for this case. We've already conceded because the policy of the Department of Justice, the big A is retroactive. As a consequence, there's been an intervening change in the law. Because there's been an intervening change in the law, basically this is a do-over of a sentencing process as to how the government views it, which means that back when I had the original sentencing, I didn't feel that I'd given Mr. Savitt's client enough notice on the third burg that Judge Faez was talking about, the two that occurred in front of Judge Aiken when she was a state court judge. And so I said we didn't need to count it, didn't need to argue about it. That's what it says in the record if you look at it. And Judge Aiken had enough other convictions. There were five for her to look at, and she chose three. Mr. Savitt has some difficulty with that, but Judge Aiken's order in her 2255 makes it clear that she considered them all, including the coercion. And, in fact, she even steadied the sentencing way back in, I think it was 2005. What's your response on the Alford argument? That was kind of interesting when it came up. We have a lot of interesting cases that occurred recently. I gave you a 28-J letter a few days ago as Mr. Savitt filed the one out of the Fourth Circuit. I found one in the Ninth Circuit, the Anderson case, which Judge Faez probably would find interesting because it dealt with a NOLO in the state court of California. But NOLO's different than a West plea or an Alford plea. You know, there are differences. NOLO is just, you know, you don't want to say guilty, but you're guilty NOLO. And for civil purposes, it doesn't have any consequences. Well, even back in the days of Vice President Agnew, we can go back a while and take a look at the technicalities of the differences. But what I try to do for this court is to say, well, we're supposed to look at the law of the jurisdiction, that's what Anderson says, and so let's look at Oregon law. So I responded to Mr. Savitt's 28-J letter with a flurry of a couple ones that I gave you. I first gave you Anderson because that was the one I recalled, and then I went ahead and did my research on Oregon law, and I gave you State v. Dawson and Cruz v. Cup. And what you see in both those cases, one was a murder case, is that the State of Oregon, the no contest plea, and I would say it's the equivalent of an Alford or a NOLO or how we want to call it, and we can discuss that, but that's what we submit to you, in Oregon constitutes the same as a guilty plea. Judge Aiken found that in her 2255 order. She said there was no problems finding that when he did the plea, she referred to it as a guilty plea on this coercion charge, that he admitted all the elements, including the knowledge element that's now required by the gay, which is purposeful conduct. But I also gave you the Oregon statute in my Rule 28-J letter, which is ORS 135.385, and then, of course, the cases, the appellate court cites the other cases, how Oregon views a no contest and a guilty plea, and they have to have the same rights. In essence, if you read the statute and you read these cases, when you do a no contest plea or an Alford plea, you have to be given the rights. You don't think there's any difference between a no contest plea and an Alford plea? Do I think there's any difference? Yeah. For purposes of Oregon law, no. Well, no, that's not my question. I didn't ask you that. I said, is there any difference between an Alford plea, as explained by the Supreme Court, and a no contest plea under Oregon law? A no contest plea, as we know, says I'm not contesting the facts. Basically, it's a stipulated facts trial. In other words, I'm not going to argue these facts that they will result in me being found guilty. That's how I view a no contest plea. All right. How about an Alford plea? Alford, I think, is a little bit more less acceptance of culpability is how I would view it after reading Alford. And how do you mesh Alford with, you know, the whole modified categorical approach? Now you're going to Vidal. Taylor. Now you're going to Vidal. Vidal. Which is an interesting case. Vidal was a, as I remember that case, and I think the Court does, too, since I think you were on the panel, is that you look at the sufficiency of the documents. And I've provided you the judgment and I've provided you the indictment and the elements of the indictment, which is crucial in Judge Aiken's finding on the coercion. And those elements include everything we need to qualify under Begay and the residual clause. Now, did he admit all those? I'm arguing that necessarily for Judge, I think that was, let me make sure I got my right judge here. I think it was Judge Foote. For Judge Foote to have accepted that under Oregon's law, the statute, they would have had to have found that all the elements were met. In fact, Judge Aiken, who was a former state court judge, when she made a 2255 finding looking at the coercion documents I provided her, she said that was, she had no doubt. So she did make the findings that I'm relying on to say that by looking at these documents, that she was satisfied. In fact, I think she went beyond that in her statement. That there was, that for him to have entered that Alford plea or to have that Alford plea, that all the elements of those offenses would necessarily have been covered. And the judge would have found that to be the case. Well, except, you know, the way I understand Alford is a defendant doesn't have to admit anything. He doesn't admit any facts. He just says, look, I see what the government's got. I'm not going to take any chances. It's like a stipulated facts trial. No, not quite. That's different. Stipulated facts trial is I agree to these facts and the results of these facts. That's true. That's true. I agree, which is essential for Shepard. I do. I agree. That's right. That's what Shepard's all about. I guess you, I guess what we'd say is the Alford plea is more I'm going to stand silent and let you, and just say that, okay, fine, you can find me guilty. Right. That'd be a fair statement. That's probably a fair statement. Now, does that mesh up with what the Supreme Court requires in Taylor? Or the other one? What comes after Taylor? I'm sorry. I come back to my argument, Judge Valles, that in order for the judge in Oregon court to have accepted the Alford plea, he would necessarily have had to find all the elements in the indictment charged were there. I meant Shepard. Well, Shepard's the documents we look at, the charging document and the judgment order. And I'm arguing that that's sufficient here, given that you meshed the Oregon law and requiring the Oregon judge to come up with all those elements. Now, interesting, because you made some comment about how sometimes judges kind of roll through the change of pleas. Oregon statute, the one case I cited, they were reversing the judge. I think it was the first case, the DUII case. Judge Roberts was the judge. Reverse it because the judge didn't do that. So Oregon courts are pretty picky, as they should be, to make sure that that statute's followed and the elements are there. Now, I've argued a lot about the Alford plea. What about the merits of these two counts, the coercion count and the third-degree assault? Well, the coercion, as I argued, Judge, you used the modified categorical approach. That's authorized by Jennings. You were a dissenting judge on that, but you didn't dissent because of using the modified categorical approach. The indictment and judgment I've provided on supplementary excerpt of Record 71 and 68 and showing that they were found guilty of the coercion. So the judge did find, even in the Alford plea, that he was guilty of that charge. The indictment says knowingly, which is the equivalent of purposefully, which I'd say under Begay, 128 Supreme Court, 1586 through 87. The violent and aggressive conduct that's required for coercion, I think Judge Aiken covered it quite well, if you look at her supplementary excerpt of Record 271, I think it is, where she talks the analysis of coercion. She does a good job. Coercion is roughly similar, which Begay requires at 128 Supreme Court, 1585, in that it's similar to the enumerated crime of extortion. So we seem to be kind of meshing it together. There is a Seventh Circuit case that I cite low, which says intimidation does qualify under the residual clause. And now we have the Alford argument, and I've given you my authorities, why I think that we're okay on that, even under Bedell and documents we've provided you. So we have the coercion. Mr. Sabat and myself both know that we also have another burg in the first degree, which under Mayer, M-A-Y-E-R, clearly would qualify. So let me ask you this. Let me just take that point. Let's just assume for a moment that at the time of the sentencing here, Judge Aiken didn't consider that third first degree burglary conviction. She mentioned it, but didn't consider it. All right. But let's just, okay. So the result here, I mean, if we were to grant, if he were to prevail on his 2255, basically what it does is it puts everything back at the start. It's a do-over. It's a do-over. And you redo the sentence, and I guess then the government would say, okay, we're not going to count the coercion. We're not going to count the assault. So now we're going to rely on the third first degree burglary. Absolutely. Okay. So is there any chance that that wouldn't fly? No. If you look at the document I submitted, Judge Aiken mentions in her order, 2255 order, that I was very careful to submit all the documents including that one. In fact, just so we make sure my record's complete before you folks. All four of them were submitted, right? Correct. And she even commented on them. She commented on all four of them. A little misstatement. She commented on all four, but she said there's four, and then she cited five. And she cited five. So we're covered that way. And, you know, the answer is at that original sentencing, Judge, Mr. Sabat's right. I said don't count. We don't need it. Now we have baguette. Things have changed. So because of the intervening change of circumstance, the law, the doctrine case, doesn't apply, in my opinion. And I'm allowed to go ahead and use those other convictions as the coercion. Well, they argued that, well, that second, in that indictment, where it alleged the two first degree burglars. He loses that argument because of Wicks. He argued, well, they may be in the same course of conduct. It happened on the same day, and the sentence was run concurrently. Judge O'Scanlan likes me to keep on time. I've got four seconds. I will cite Wicks, 833 Fed Second, 992. Those were two burglaries committed the same night, and this court found that they counted separately because they were different locations. So the three burglaries we have here would be counted if we go back on a remand because Judge Aiken was wrong on coercion, which we submit she wasn't. The assault three, I'm now over just about. The assault three that you asked about, Judge O'Scanlan, that's my weakest conviction. Okay. No doubt about it. That's why Judge Aiken didn't say it wasn't. She simply said accepting. Look at third language. She says accepting that it doesn't count. You know, he still has this. Due to the mens rea, right? Correct. And so I argued that because it's unclear, the burden's on him in a 2255. It would clearly have been on me at the sentencing. And given the pleading, it would have indicated annoying conduct as opposed to reckless. All right. Thank you. Thank you, counsel. Your time has expired. Counsel, before you leave the room, would you please give your opposing counsel the citation that you just gave from the bench? On Wicks? On Wicks. Is it? Unless it's already in. It's in my supplementary. I've extracted records. Oh, it's in the SCR. Okay. Very well. Very well. That's fine. Very fine. No problem then. All right.
judges: Kendall, O'scannlain, Paez